Lawrence COLEMAN, Appellant,

v.

UNITED STATES, Appellee.

Terry LINDSEY, Appellant,

v.

UNITED STATES, Appellee.

Nos. 10882, 10915.

District of Columbia Court of Appeals.

Argued Sept. 15, 1977.

Decided Oct. 31, 1977.

David Carey Woll, Washington, D. C., appointed by the court, for appellant Coleman. Michael J. Walsh, appointed by the court, for appellant Lindsey.

E. Thomas Roberts, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease and Michael I. Gewirtz, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and GALLAGHER and YEAGLEY, Associate Judges.

NEWMAN, Chief Judge:

Jointly tried by a jury and convicted of first-degree burglary while armed, two armed robberies and an assault with a dangerous weapon, appellants assert that they were deprived of their Sixth Amendment

right to trial "by an impartial jury." We affirm.[1]

On a Sunday afternoon, appellants entered the rectory of Saint Paul and Augustine Catholic Church, ostensibly for the purpose of arranging a baptism. In truth, they were there for a less laudable purpose, as soon became apparent when they robbed Fathers Raymond Kemp and Andre Bouchard of money and other valuables at gunpoint. In the course of the events, they also assaulted the housekeeper with a pistol. Fortunately, between the time Father Bouchard discerned the true nature of their visit and appellants discovered his presence in the rectory, Father Bouchard had time to call the police. The police responded with celerity, trapping appellants inside the rectory. With the aid of police dogs, appellants were arrested while hiding behind file cabinets in the basement. Proceeds of the robberies and a pistol were seized from Coleman at the scene. Both appellants were positively identified by all three victims.

Appellants' jury issue consists of three contentions: (1) the motion to exclude all Catholics from the jury should have been granted since "no Roman Catholic is or can be neutral as to the credibility of a priest"; (2) the trial court unduly restricted the voir dire of the jury concerning religious biases; and (3) the foregoing errors were exacerbated by the court's refusal to give a special instruction on the credibility of clerics' testimony.

## I

Appellants' exclusionary motion at trial and their argument on appeal is premised on the assumption that Catholics, as a class, are unable to judge impartially the truth or falsity of the testimony of Catholic clerics because of their religious faith. No evidence was presented to the trial court to support this bald assertion. Appellants single out Catholics in this regard when it could be argued with equal force that because of the prevalence of religious belief in this country, many members of our society generally of whatever faith may be predisposed to believe that clerics can be trusted to always tell the truth. In other words, what appellants contend with regard to Catholics specifically could be contended as well with regard to anyone who acknowledges a belief in some religious faith when confronted with a cleric as a witness. Thus, no apparent basis exists for singling out Catholics from other religious believers for exclusion from jury duty. It should also be noted that in this age of the increasing secularization of our society, it may be equally plausible that the word of a cleric would be regarded no more highly by jurors than the word of a layman. Appellants have shown no factual foundation for their contention.

■ The contention is also without legal foundation. A prospective juror who is otherwise competent to serve on a jury may not be disqualified merely because of religious belief or status. *Rose v. Sheedy,* 345 Mo. 610, 134 S.W.2d 18 (1939). The mere potentiality for bias based on religious affiliation cannot justify the elimination of a prospective juror. Only the demonstration of an actual bias may provide such a justification. As the Supreme Court stated in *Reynolds v. United States,* 98 U.S. 145, 25 L.Ed. 244 (1878), ". . . if hypothetical only, the partiality is not so manifest as to necessarily set the juror aside." 98 U.S. at 156.

■ Moreover, members of a religious denomination or a specific church may act as jurors in cases in which other members of the same religious denomination or church are parties. Such persons cannot be excluded solely on the basis of common religious or church affiliation. *Birmingham Baptist Hospital v. Orange,* 284 Ala. 160,

---

1. Both appellants also claim reversible error in (1) the admission into evidence of money seized from Coleman and testimony of comments made by him, and (2) the admission of certain physical evidence without proof of a proper chain of custody. Lindsey also assails the denial of his motions to dismiss and for judgments of acquittal as to all armed counts. We find these claims to be lacking in merit.

223 So.2d 279 (1969); *American Creosote Works v. Harp,* 215 Miss. 5, 60 So.2d 514 (1952); *Searle v. Springfield Roman Catholic Bishop,* 203 Mass. 493, 89 N.E. 809 (1909); *Barton v. Erickson,* 14 Neb. 164, 15 N.W. 206 (1883).

■ Finally, the position advanced by appellants is "suspect" under the "equal protection" provisions of the Constitution. With regard to this general issue of jury selection, the Supreme Court has recently stated, ". . . In our heterogeneous society policy as well as constitutional considerations militate against the divisive assumption—as a *per se* rule—that justice in a court of law may turn upon the pigmentation of skin, the accident of birth, or the choice of religion." *Ristaino v. Ross,* 424 U.S. 589, 596 n. 8, 96 S.Ct. 1017, 1021, 47 L.Ed.2d 258 (1976).

■ We hold that the trial court did not err in refusing to grant the motion to exclude all Roman Catholics from the jury.[2]

## II

Appellants presented voir dire questions on the issue of religion for review by the court. The court permitted the following questions:

Is there anyone that would be upset by the fact that the victims were priests?

Is there any prospective juror, especially those who might share the witnesses' faith, who would be likely to give greater or less weight to the testimony of priests simply because they are priests?

Is there anyone on the jury panel who feels that a crime committed against a clergyman of any faith is more serious than a crime committed against just an ordinary citizen?

However, the court sustained government objection to the following two questions, ruling that the above-quoted questions adequately covered the same subject matter:

If the evidence suggested it, could each of the members of this panel find, as a

matter of fact, that a priest's testimony has been untruthful?

Is there any prospective juror who has any special affection for or grudge against priests in general?

■ A defendant may examine prospective jurors in order to expose any prejudices which would tend to indicate a disqualifying state of mind. *Tuckson v. United States,* D.C.App., 364 A.2d 138 (1976); *Davis v. United States,* D.C.App., 315 A.2d 157 (1974). Inquiry as to a juror's religious beliefs is proper on voir dire where religious issues are presented expressly in the case, or where a religious organization is a party to the litigation, or where it is a necessary predicate to the exercise of peremptory challenges. *See generally* 47 Am.Jur.2d *Jury* § 283 (1969); 54 A.L.R.2d 1204 (1957). The predisposition of a juror to accord weight to the testimony of a priest solely on the basis of his religious status would tend to evince such a disqualifying state of mind and thus would constitute an appropriate subject for inquiry on voir dire. *Casey v. Roman Catholic Archbishop,* 217 Md. 595, 143 A.2d 627 (1958). Since the trial court did permit voir dire in this subject area, the question presented is whether the court erred in curtailing it where it did.

■ The trial court has broad discretion in determining the scope and form of questions to be used in voir dire—subject to the "essential demands of fairness." *Aldridge v. United States,* 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931); *Davis v. United States, supra.* Absent an abuse of discretion prejudicing a party's rights, the court's ruling on the scope and content of voir dire will not be overturned on appeal. *United States v. Liddy,* 166 U.S.App.D.C. 95, 509 F.2d 428 (1974); *United States v. Robinson,* 154 U.S.App.D.C. 265, 475 F.2d 376 (1973). Based on the record in this case, we conclude that the trial court did not abuse its discretion in refusing to allow appellants to ask the two questions at issue

**2.** We note that no member of the petit jury as empanelled was a member of St. Paul and Augustine Church; none of them knew either cler- ic; and none lived in the immediate vicinity of the church.

in addition to the other questions permitted on the same subject.

### III

Appellants requested that a special instruction be given concerning the credibility of clerics. They suggested that the court adapt Criminal Jury Instructions for the District of Columbia, No. 2.25 (2d ed. 1972) (pertaining to police officers) to refer to clerics. The court denied the request and gave a general instruction on credibility.

The determination of whether specialized cautionary instructions regarding the weight and credibility of the testimony of specific witnesses or classes of witnesses should be given is vested within the discretion of the trial court. *Myers v. Moffett,* 312 S.W.2d 59 (Mo.1958); *White v. Chicago, M. & P.S. Ry.,* 49 Mont. 419, 143 P. 561 (1914). Where the jury is adequately instructed generally with respect to the credibility of all witnesses, the trial court may properly refuse to deliver specialized instructions focusing on specific witnesses or classes of witnesses, absent quite special circumstances. *Young v. Arkansas State Highway Commission,* 242 Ark. 471, 414 S.W.2d 87 (1967); *Barger v. Barger,* 221 Ind. 530, 48 N.E.2d 813 (1943). Nothing about this case suggests that any different rule or criteria should be fashioned for clerics. We see no merit in the assertion that the trial court abused its discretion on this issue.

*Affirmed.*