**Tommy C. MUSGROVE, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 80–824.**

District of Columbia Court of Appeals.

Argued Sept. 22, 1981.

Decided Feb. 3, 1982.

Steffen W. Graae, Washington, D.C., for appellant.

Darryl W. Jackson, Asst. U. S. Atty., Washington, D.C., with whom Charles F. C. Ruff, U. S. Atty., and John A. Terry, John R. Fisher, and Jay B. Stephens, Asst. U. S. Attys., Washington, D.C., were on the brief, for appellee.

Before HARRIS,* PRYOR, and BEL-SON, Associate Judges.

* *Associate Judge* HARRIS did not participate in the decision in this case.

PER CURIAM:

Appellant was charged with assault in violation of D.C.Code 1981, § 22–504. He was convicted by a jury. He challenges his conviction principally upon the grounds that the trial court abused its discretion by: (1) failing to conduct a full and complete voir dire; (2) denying his motions for a judgment of acquittal; and (3) admitting into evidence five out-of-court statements purportedly made by the complainant. We conclude that the admission into evidence of one of those statements constituted reversible error. Accordingly, we set aside appellant's conviction and remand the case.

I

Early one morning, two police officers arrested Michael Morris for disorderly conduct. He was extremely intoxicated and had caused a great deal of commotion at a bus station.[1] Morris was transported to the police station by the arresting officers. During Morris' processing at the station, he was loud and uncooperative. Morris resisted Sergeant Moss, the fingerprint officer, by "pulling back with his full body," and the officer was forced to "ben[d] [Morris'] fingers back to hold onto him so he wouldn't hit me." Appellant, a Metropolitan Police Department officer, helped Sergeant Moss get Morris under control. By the end of the booking process, Morris had a cut over one of his eyes which necessitated treatment at a hospital.

On the basis of Morris' complaint, appellant was indicted for allegedly assaulting Morris in the police station. The preceding account of the events surrounding Morris' arrest reflects the only agreed upon facts arising from appellant's trial. Testimony about the remainder of the morning following Morris' fingerprinting was in sharp conflict.

The complainant's version of the incident provided the basis for the government's case. Morris claimed that appellant had questioned him in the booking room and had shoved him toward the fingerprint officer. Another police officer, however, who had been assigned to the booking desk that morning testified that he had not seen appellant at all. Morris testified that, after he was placed in a cell, appellant stood outside the cell laughing at him. Morris contended that this taunting provoked him to curse and to spit at appellant. According to Morris, appellant then entered his cell and, in retaliation, struck him several times with a blackjack. Morris admitted that he was very intoxicated that night and early morning.

It was undisputed that Officer Musgrove escorted the complainant to the hospital for minor treatment, and then brought him back to the police station.[2] The disorderly conduct charge against Morris was dropped that day.

At the conclusion of the cross-examination of Morris, the government sought to admit five written extrajudicial police reports as Morris' prior consistent statements in an effort to rehabilitate his testimony. Over strenuous objections by the defense, the trial judge admitted all the statements into evidence.

Appellant testified on his own behalf. Officer Musgrove's testimony presented an acutely dissimilar version of the events. He explained that he encountered Morris when he went to assist Sergeant Moss, who was struggling with the obviously uncooperative, belligerent, and intoxicated complainant in the fingerprint room. Musgrove testified that he struck Morris on the forehead with his fist to get him under control, and that he was not carrying a blackjack. Appellant also acknowledged having taken Morris to the hospital on orders from his sergeant.

1. Morris claimed he had been robbed at the bus station. He was seeking help, but received no attention from anyone. He became louder and more indignant when the arresting officers did not believe his story.

2. In his testimony, the complainant recalled that he had identified appellant as his assailant to the hospital doctor. The doctor, however, testified that he did not remember this particular case and that he had no recollection of the presence of a police officer during Morris' treatment.

The arresting officers gave no testimony indicating that they had seen appellant in the station that morning. Other officers on duty testified either that they had not seen appellant at all, or had seen him only when he was leaving for or returning from the hospital with Morris. The fingerprint officer corroborated appellant's version of the incident. All of the officers who had encountered Morris testified to his intoxication and bad behavior.

Appellant moved twice for a judgment of acquittal. Both motions were denied. The jury returned a guilty verdict two days after the trial ended. Appellant was sentenced to one year's imprisonment, with the trial judge taking the unusual step of allowing the posting of an appeal bond, thus suspending execution of the sentence pending this appeal.

II

Appellant contends that the trial court committed reversible error by not fully exploring during voir dire the potential jurors' attitudes toward police officers and police brutality. We conclude that the trial judge did not abuse her discretion in the manner in which she conducted the voir dire.

■ "[The] very purpose of the *voir dire* is to permit counsel to satisfy themselves that they have an impartial jury." *Harvin v. United States*, D.C.App., 297 A.2d 774, 777–78 (1972) (footnote omitted). In attaining this objective, the trial judge has broad discretion over the questions asked on voir dire. *Aldridge v. United States*, 283 U.S. 308, 310, 51 S.Ct. 470, 471, 75 L.Ed. 1054 (1931); *Evans v. United States*, D.C. App., 392 A.2d 1015, 1025 (1978); *Harvin v. United States, supra*, 297 A.2d at 777. The trial court's ruling on the content and scope

of voir dire will not be reversed on appeal "[a]bsent an abuse of discretion prejudicing a party's rights." *Coleman v. United States*, D.C.App., 379 A.2d 951, 954 (1977); accord, *United States v. Liddy*, 166 U.S. App.D.C. 95, 101–02, 509 F.2d 428, 434–35 (1974), cert. denied, 420 U.S. 911, 95 S.Ct. 833, 42 L.Ed.2d 842 (1975); *United States v. Robinson*, 154 U.S.App.D.C. 265, 269, 475 F.2d 376, 380 (1973). In this case, the trial judge conducted the voir dire herself, posing questions to the prospective jurors about their familiarity with the people involved in the case and with the events surrounding the alleged assault on Morris.

■ The trial judge's questions also indicated her awareness of the publicity which the case had received. In cases that attract media attention and are of community concern, the effect of public sentiment on potential jurors is a proper consideration during voir dire. *United States v. Robinson, supra*, 154 U.S.App.D.C. at 270, 475 F.2d at 381. The trial judge ascertained that no member of the jury panel had any independent knowledge of the facts of the case. We find no error in the trial court's pursuit of that line of inquiry.

■ Appellant's counsel submitted 14 proposed voir dire questions, eight of which were asked by the trial court (some in modified form, others verbatim). Appellant contends that the trial court's refusal to ask the remaining questions—which focused on the prospective jurors' attitudes toward police brutality—constituted reversible error. The record reveals, however, that while appellant's specific questions were not posed during voir dire, the jurors' feelings about police misconduct were explored to some extent.[3] The trial judge conducted a sufficient voir dire, and we find no abuse of discretion.

3. The trial judge asked these questions:
Have any of you and or any immediate member of your family or close friends ever filed a complaint against the police for either false arrest or for a police brutality charge?
Is there any reason—I know I have asked everybody a lot of questions in this panel, but is there any reason that any of you can think of which in your opinion would render partion [sic] on a jury and would make you

unable to be fair and impartial if you were chosen to sit on this jury?
Is there any one of you who believe for any reason that you could not render a fair and impartial verdict in this case?
While we conclude that the voir dire was adequate, we observe that the trial court's failure to ask a general question probing the jurors' attitudes toward police brutality rendered the voir dire only minimally sufficient.

## III

Appellant also maintains that the trial court committed error by denying his motions for a judgment of acquittal because the evidence was insufficient to support submission of this case to the jury. We disagree.

■ Our standard for reviewing a ruling on a motion for a judgment of acquittal is whether a reasonable juror fairly could conclude beyond a reasonable doubt that the defendant was guilty. *In re P.A.S.*, D.C. App. 434 A.2d 461, 462 (1981); *Smith v. United States*, D.C.App., 389 A.2d 1356, 1358 n.5, *cert. denied*, 439 U.S. 1048, 99 S.Ct. 726, 58 L.Ed.2d 707 (1978); *Byrd v. United States*, D.C.App., 388 A.2d 1225, 1229 (1978); *Curley v. United States*, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, *cert. denied*, 331 U.S. 837–38, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947). When we review the denial of a motion for a judgment of acquittal and assess the sufficiency of the evidence, we will reverse "only if, after viewing the evidence in the light most favorable to the government, it can be said that the decision is clearly erroneous." *Raymond v. United States*, D.C.App., 396 A.2d 975, 978 (1979) (citations omitted). The reviewing court need only find evidence that is capable of persuading the jury to reach a guilty verdict, while allowing the jury to determine credibility, evaluate the weight of the evidence, and draw justifiable inferences of fact. *United States v. Fench*, 152 U.S.App. D.C. 325, 333, 470 F.2d 1234, 1242 (1972), *cert. denied*, 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973).

The government's evidence against appellant consisted primarily of the testimony of the complaining witness, Michael Morris, and of statements which the complainant allegedly made which were contained in police reports of the incident.[4] In his testimony, Morris gave a short recital of the events of the morning of the assault, admitting that he was very intoxicated at that time. He testified about the booking, the fingerprinting, his beating, and his trip to the hospital.

■ The identification evidence presented a very close question.[5] Morris conceded that he had not seen his assailant's face during the alleged incident. In the police complaint reports filed weeks after the events, the complainant named appellant as the officer who assaulted him (after having been supplied with Musgrove's name by another police officer, Sergeant Bell), but he was unable to identify Musgrove in a photo array. In those reports, made at different times after the incident, Morris also provided varying descriptions of the person who struck him. Morris did testify that the officer who took him to the hospital was the same one who had assaulted him, and he identified appellant as the officer who transported him to the hospital. In his testimony, Morris also stated that he had identified appellant to the doctor from whom he received treatment at the hospital.

While the government's case was not strong, the evidence presented against appellant met the threshold requirements for withstanding a motion for a judgment of acquittal, and the trial court did not err in denying the motions.

## IV

Appellant further argues that the trial court committed reversible error in admitting five documents containing purported statements of the complaining witness.[6]

---

4. These police and complaint reports were admitted into evidence as the government's Exhibits 1–5. We discuss them in detail in Part IV, *infra.*

5. When evaluating the sufficiency of identification evidence, we have observed that "so long as a reasonable juror could find the circumstances surrounding the identification convincing beyond a reasonable doubt, the case is properly submitted to the jury." *Berryman v.*

*United States*, D.C.App., 378 A.2d 1317, 1321 (1977).

6. In the first "Complaint/Witness Statement" filed after the incident, which is not dated, Morris gave a sketchy account of the assault. He did not name his assailant but stated that the same officer who had attacked him took him to the hospital. This document was admitted as government's Exhibit 1.

Since the admission of one of those reports clearly was prejudicial error, we reverse and remand.[7]

In an attempt to bolster Morris' testimony following thorough cross-examination, the prosecution succeeded in having the five reports admitted as prior consistent statements of the complaining witness. Appellant vigorously objected to the admission of this evidence, claiming that it did not meet the force of the impeachment and therefore should not be accepted for rehabilitative purposes. The trial court admitted the evidence, however, and later cautioned the jury that it could consider the statements only in evaluating Morris' credibility.

 Prior consistent statements ordinarily are inadmissible, on the theory that mere repetition does not guarantee veracity. *Scott v. United States*, D.C.App., 412 A.2d 364, 373 (1980); *Coltrane v. United States*, 135 U.S.App.D.C. 295, 304, 418 F.2d 1131, 1140 (1969). Only in narrowly defined and exceptional circumstances may prior consistent statements be introduced into evidence. Use of a prior consistent statement is permissible to rehabilitate a witness when the witness' credibility has been under-

mined by a specific suggestion of fabrication or motive to lie, or when "the witness' testimony has been impeached by a portion of a statement which also contains relevant information that could be used to meet the force of the impeachment." *Rease v. United States*, D.C.App., 403 A.2d 322, 328 n.7 (1979), citing *Coltrane v. United States, supra*, 135 U.S.App.D.C. at 304, 418 F.2d at 1140. Prior consistent statements, however, may not be used to support a witness' unimpeached testimony. *Johnson v. United States*, D.C.App., 434 A.2d 415, 420 (1981). When used for rehabilitation, "the proposed evidence must be directed only at the particular impeachment that occurred," *Rease v. United States, supra*, 403 A.2d at 328, and must include a statement by the declarant that will support particular testimony that has been impeached. *See Copes v. United States*, 120 U.S.App.D.C. 234, 236, 345 F.2d 723, 725 (1964).

 A threshold question which we must address is whether these reports constituted "statements" by Morris. Our attention immediately turns to Exhibit 2, which is a citizen complaint form prepared two weeks after the incident.[8] This evi-

---

A "Citizen Complaint Form" dated two weeks after the incident was admitted as government's Exhibit 2. That complaint was not signed by Morris. Lieutenant Rosenberger wrote the complaint and Sergeant Bell witnessed it. The full complaint is set out in footnote 8, *infra*.

Another handwritten complaint/witness statement was prepared one month after the incident and admitted as government's Exhibit 3. This 12-page report provided extensive details through Morris' recall of the assault and through police questioning. Musgrove is not identified as the assailant in this complaint, and an inaccurate description of him was given by the complainant.

Government's Exhibit 4 is a transcript of a question and answer session with Morris in a Metropolitan Police Department Internal Affairs Division investigation conducted roughly four months after the incident. For the second time, Morris identified appellant as the purported assailant.

Government's Exhibit 5 is the complainant's grand jury testimony, given more than six months after the alleged assault occurred, in which he accused appellant of assaulting him. Morris also testified that Musgrove had admit-

ted by his demeanor at the hospital that he had beaten the complainant.

7. Although we need not discuss at length the admissibility of government's Exhibits 1, 3, 4, and 5, given the manifest reversible error in the admission of Exhibit 2, we do so briefly in order that, should the government decide to retry the case, appellant's new trial would be guided appropriately.

8. The Citizen Complaint Form contained the following "Description of Complaint":

Mr. Morris complains that on 4/4/79 he was arrested by Officer Michael C. Revel of the First District for disorderly conduct. He was then brought to the First District Sub-Station for processing.

He complains that during his processing Desk Sergeant Freddie H. Moss unnecessarily bent his fingers to force him to state his Social Security number while being booked. He states that when his fingers were bent his right index finger come out of joint.

He, also, complains that after being placed into a cell Officer Tommy C. Musgrove entered the cell and struck him several times with a short billy club.

dence was offered as a purported statement of the complainant. However, the complaint form was neither signed by Morris nor in his handwriting. It does not use Morris' own language or quote him. Thus, there is nothing on the face of the document to indicate that it is Morris' statement.

In addition, the circumstances surrounding the preparation of the complaint and the procedure leading to Morris' identification of Musgrove cast further doubt on the extent to which the statement may be attributed to the complainant. Morris apparently had decided to forego making a formal complaint until Sergeant Bell sought him out, told him that appellant was the officer who had struck him, and urged him to make a complaint. Moreover, Morris was unable to identify appellant on several occasions, including from a photo array. He further admitted that he could not identify his assailant until after Sergeant Bell's contact. The circumstances surrounding the preparation of the citizen's complaint form—and especially the face of that complaint—lead us to conclude that the trial court erred in admitting the government's Exhibit 2 as Morris' prior consistent statement.[9]

Having determined that the government's Exhibit 2 was admitted erroneously, we proceed to consider whether its admission was prejudicial to appellant. The exhibit contains the seriously damaging statement that "Officer Tommy C. Musgrove entered the cell and struck him [Morris] several times with a short billy club." When a case is as close as this one, there is a greater likelihood that the defendant was prejudiced by the erroneous admission of such an exhibit. *See Coltrane v. United States, supra,* 135 U.S.App.D.C. at 305, 418 F.2d at 1141. After reviewing the record before us, "it is impossible to conclude that substantial rights were not affected" by the error.[10] *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). The erroneously admitted evidence not only was represented to be a statement which had been made by the complainant, but also could be interpreted as reflecting the opinions of appellant's superior officers. The prejudice inherent in presenting such evidence to a jury is overwhelming, leaving us unable to say with fair assurance that the verdict was not swayed substantially by the error. The admission of Exhibit 2 into evidence constituted reversible error.

The admissibility of the government's Exhibits 1, 3, 4, and 5, which do constitute statements by the complainant, must be determined based upon their capacity to rehabilitate directly the specific areas of impeachment. *Rease v. United States, supra,* 403 A.2d at 328. As noted above, prior consistent statements are admissible for rehabilitative purposes only in the exceptional situations in which they clearly will help the factfinder determine the truthfulness of the witness. *United States v. Sampol,* 204 U.S. App.D.C. 349, 401, 636 F.2d 621, 673 (1980). The impeachment of Morris on cross-examination was directed at his capacity to know and to recall the events of his arrest as affected by his high degree of intoxication. Consequently, evidence tendered for the purpose of rehabilitation must respond to that particular impeachment. We note that other information contained in these exhibits relates to matters which were not raised

He states that as a result of his treatment he sustained numerous injuries for which he received treatment at D.C. General. This complaint was written for Mr. Morris by Lieutenant Larry W. Rosenberger 1D.

9. The complaint was written by Lieutenant Rosenberger and witnessed by Sergeant Bell. Lieutenant Rosenberger testified that he had no first-hand knowledge about what happened in the station that night. Sergeant Bell did not testify at trial.

10. This standard of review, which requires us to determine whether we can say, "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error," *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946), applies to cases of non-constitutional dimension such as this. *See also* D.C.Code 1981, § 11–721(e).

in the complainant's testimony.[11] Those subjects were irrelevant to rehabilitation and were inadmissible. If those statements are offered as evidence upon a possible retrial, their irrelevant and prejudicial sections must be excised in order to ensure appellant a fair trial.

*Reversed and remanded.*

---

11. For example, statements relating to Morris' interviews with the media and the reasons for his hesitancy in filing a complaint are irrelevant.