**Shirley M. MURRAY, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 85–592.**

District of Columbia Court of Appeals.

Argued Sept. 4, 1986.

Decided Oct. 15, 1987.

Richard K. Gilbert, Washington, D.C., appointed by the court, for appellant.

Mark G. Gellar, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Judith Hetherton, and Mary A. Terrell, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before PRYOR, Chief Judge, and BELSON and TERRY, Associate Judges.

PER CURIAM:

In an information filed August 17, 1984, Shirley M. Murray was charged with one count of simple assault, D.C.Code § 22–504 (1981), and one count of possession of a prohibited weapon (knife), D.C.Code § 22–3214(b) (1981). After trial, the jury found Murray guilty of simple assault, but acquitted her of the weapon charge. This appeal raises only the issue of the adequacy of the jury *voir dire.* Murray contends that the trial judge erred by arbitrarily curtailing her *voir dire,* thereby frustrating the effective use of her peremptory challenges. We disagree, and therefore affirm.

Our inquiry will focus on the *voir dire* of two potential jurors, juror 245 and juror 218. But, to put the issues in focus, we begin with a general description of the jury selection process.

The trial judge conducted the *voir dire* for the most part by himself, but permitted counsel to ask some additional questions of those jurors who responded positively to certain of his questions. At the outset, the court asked the potential jurors if any of them recognized any of the parties, lawyers, or witnesses. One juror who personally knew the prosecutor was excused. The court next asked whether any juror was closely associated with a lawyer or judge. Jurors 286, 88, and 245 responded affirmatively. The court then asked these jurors what type of law their acquaintance practiced and whether their close association would prejudice them in the instant case. All responded that they would not be prejudiced.

The court next asked whether any potential juror was closely associated with anyone connected with law enforcement. Two jurors, 184 and 218, indicated that they were. Again the trial judge briefly followed up each affirmative response with questions concerning whether the affiliation would prejudice the juror in this case. Specifically, the trial court asked the following question of juror 218, who acknowledged having a sister who was a police officer with the District of Columbia Metropolitan Police Department:

> Is there anything about her work, maybe some story that she has told you of one of her experiences? Maybe she's been injured or maybe she has shared a view with you that has made a strong impression upon you that causes you to believe that you might be biased or prejudice[d] against either side in this case?

Both potential jurors indicated that they would not be prejudiced. Defense counsel

did not request permission to ask additional questions of either juror at that time.

The court then asked whether any potential jurors or persons close to them had been accused of, the victim of, or a witness to a crime in the past five years. *See United States v. Ridley*, 134 U.S.App.D.C. 79, 81, 412 F.2d 1126, 1128 (1969) (per curiam). Before any of the jurors responded, the prosecutor and defense counsel approached the bench, and defense counsel said:

> Your Honor, the only thing I wanted to bring up because I wanted to ask some questions, some individual questions because the jurors have answered positive[ly] on some of the other questions on *voir dire*.
>
> What I would like to propose is, if those people happen to come up as a result of this question, that I can just, with the Court's permission, just ask my follow-up questions and if not, inform the Court which ones at the end of it that I would like to have examined individually.

The court responded, "You can ask your questions as they come up."

Seven venire members answered affirmatively to the *Ridley* question. Both counsel were given the opportunity to question all seven in detail. Juror 286 was questioned by defense counsel at this time regarding his sister's work as a lawyer. Appellant raises no claim concerning his *voir dire*. At the end of the follow-up questioning of the seven, defense counsel requested the court's permission to ask follow-up questions of an additional member of the venire. Following this questioning, defense counsel asked that yet another potential juror be brought to the bench, and the following exchange occurred:

THE COURT: How many more of these do you have?

MR. GILBERT [Defense Counsel]: Four more.

THE COURT: All right, I do not usually permit this procedure, Mr. Gilbert. This is time consuming, and time is at a premium. You pick your best two and I will let two come up.

MR. GILBERT: Well, Your Honor, if I may be heard. It seems to me when we ask somebody some questions like whether they know police officers, I recognize that this Court has an obligation to ask the general questions that bias you [sic], but I also have to make some preemptory [sic] challenges, and what I want to know is how they know lawyers or how they know police officers; I'm interested in how close they are even though it may not rise to the challenge of cause.

All I need to do is to explore these people who have said they either know lawyers, in one case, they know a prosecutor, in two cases, they know people on the police force.

THE COURT: All right, pick your best two.

MR. GILBERT: Very well. Over objection I would just like to ask Number 88 and Number 184.

No claim is raised with regard to the *voir dire* of jurors 88 and 184. Defense counsel was prohibited from following up on the questioning of juror 245, whose cousin is a prosecutor in the District of Columbia, and juror 218, whose sister is an officer in the District of Columbia Metropolitan Police Department. Appellant's claim of error is based on the court's refusal to allow her to ask further questions of jurors 245 and 218. Each side used all three of its peremptory challenges. One of the jurors struck peremptorily by defense counsel was juror 245. Juror 218 sat on appellant's jury.

The standard for reviewing a trial court's conduct in the *voir dire* of the jury is abuse of discretion. This court has held that "the trial court [has] broad discretion in conducting *voir dire* examination; absent an abuse of discretion and substantial prejudice to the accused, the trial court will be upheld." *Khaalis v. United States*, 408 A.2d 313, 335 (D.C.1979), *cert. denied*, 444 U.S. 1092, 100 S.Ct. 1059, 62 L.Ed.2d 781 (1980); *accord, Musgrove v. United States*, 441 A.2d 980, 983 (D.C.1982) (per curiam) ("trial court's ruling on the content and scope of *voir dire* will not be reversed on appeal '[a]bsent an abuse of discretion prejudicing a party's rights'") (quoting *Cole-*

*man v. United States,* 379 A.2d 951, 954 (D.C.1977)). In *Cordero v. United States,* 456 A.2d 837, 845 (D.C.1983), we held that "[t]here is 'substantial prejudice to the accused' in the context of *voir dire* ... when 'the procedure used for testing impartiality [does not] create[ ] a reasonable assurance that [juror] prejudice would be discovered if present,'" (citation omitted) (quoting *United States v. Dellinger,* 472 F.2d 340, 367 (7th Cir.1972), *cert. denied,* 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973)). The question before us, therefore, is whether the defendant had enough information to make effective use of her peremptory challenges or, instead, her ability to do so was impaired by the court's denial of her request to ask follow-up questions of additional members of the jury venire.

The primary duty of the court in the *voir dire* is to discover those jurors who must be dismissed for cause, *see Dellinger, supra,* 472 F.2d at 367, and "to permit counsel to satisfy themselves that they have an impartial jury," *Harvin v. United States,* 297 A.2d 774, 777–78 (D.C.1972). In *Dellinger,* the Seventh Circuit cautioned that defendants must also "be permitted sufficient inquiry into the background and attitudes of the jurors to enable them to exercise intelligently their peremptory challenges." 472 F.2d at 368. The court's duties include, in a case in which a police officer will testify, questioning jurors as to whether they would give more credence to the testimony of a police officer than that of a lay person, *see Harvin, supra,* 297 A.2d at 777, and, in a politically sensitive case, outlining the facts to the jury and asking if any juror has a bias concerning those facts, *Cordero, supra,* 456 A.2d at 838–39. *Cf. Musgrove, supra,* 441 A.2d at 983 (*voir dire* minimally sufficient in police brutality case even though trial court did not ask a general question probing the jurors' attitudes toward police brutality when jurors' feelings about police misconduct were explored to some extent).

The questions on which defense counsel sought to follow up in this case have been common areas of inquiry in a jury *voir dire. See, e.g., Young v. United States,* 478 A.2d 287, 289 (D.C.1984) (jurors asked about their involvement in the field of law enforcement and the criminal justice system). They do not fall, however, within the categories of "controversial matters requiring careful inquiry" enumerated by this court in *Cordeo, supra,* 456 A.2d at 842.

We hold that, on the facts of this case, the *voir dire* of the two jurors in question, jurors 245 and 218, was at least minimally sufficient and within the range of the trial court's broad discretion. The trial judge went well beyond the practice, disapproved in *Dellinger, supra,* 472 F.2d at 369, of asking a single conclusory question regarding a juror's prejudice. In questioning juror 245, whose cousin is a lawyer in the District of Columbia, the trial court asked about his cousin's type of practice. In addition to ascertaining that his cousin was a prosecutor, but that the juror did not know for whom his cousin worked, the court asked whether his cousin's law practice "has created some impression or feeling in you that might interfere with your ability to be fair and impartial." Juror 245 answered that he could be impartial.[1]

Although it would have been the better practice for the court, after learning that his cousin was a prosecutor, to delve further into the juror's relationship with his

---

1. The trial court's complete *voir dire* of juror 245 was as follows:

    JUROR: My first cousin is a lawyer in the District.
    THE COURT: Lawyer?
    JUROR: Yes, sir.
    THE COURT: What kind of law does he or she practice?
    JUROR: I'm not really sure whether she's a criminal lawyer or which department she's with.
    THE COURT: All right. Is there something about the fact that she practices law that has created some impression or feeling in you that might interfere with your ability to be fair and impartial?
    JUROR: No.
    THE COURT: All right. Do you know if she's a prosecutor or is she—
    JUROR: Yes, she's a prosecutor.
    THE COURT: And, is it a prosecutor in any particular agency such as U.S. Attorney's Office? Do you have those kind of details?
    JUROR: No, I don't.
    THE COURT: Thank you.

cousin and any effect it had on him, we do not find it an abuse of discretion not to have done so. In any event, the questioning that took place was sufficient to lead defense counsel to strike juror 245, thus eliminating any chance that participation by that juror might have prejudiced appellant.

The trial court similarly questioned juror 218, who did remain to serve on the jury, concerning his sister's work in the Metropolitan Police Department, learning that she was a police officer working in the district including Iowa Avenue, that juror 218 felt that he could be neutral as a juror, and that he would weigh the testimony of police officers as he would the testimony of any other witness. Again, it would have been more illuminating to ask a few additional questions concerning what juror 218 knew about his sister's police work, but it did not rise to the level of abuse of discretion not to allow such questions to be asked in the context of the other questioning which took place.

Our consideration of appellant's argument here is aided by comparing the *voir dire* in this case with the *voir dire* we found adequate in *Musgrove v. United States, supra,* 441 A.2d at 983. There we dealt with a subject matter about which jurors were more likely than here to harbor strong feelings, *viz.,* a charge of brutality leveled against a police officer. We held that because "the jurors' feelings about police misconduct were explored to some extent," a *voir dire* that included but a single question about police brutality was "minimally sufficient." *Id.* at 983 & n. 3. The trial court probed no further than to inquire whether any of the prospective jurors, or members of their families or close friends, had ever filed a police brutality charge, refusing to ask six other questions

that defense counsel requested concerning police brutality. *Id.*[2]

We are satisfied that the broader questioning by the trial judge here, despite a somewhat arbitrary limitation on further questioning by counsel, was reasonably calculated to uncover the biases of the jurors and to give guidance to counsel in exercising their peremptory challenges.[3]

Accordingly, we hold that the trial judge did not abuse his discretion in the manner in which he conducted *voir dire.* The judgment appealed from is, therefore,

*Affirmed.*

TERRY, Associate Judge, dissenting:

My colleagues hold that, on the facts of this case, the *voir dire* of jurors 245 and 218 "was at least minimally sufficient and within the range of the trial court's broad discretion." *Ante* at 123. With all respect, I cannot agree.

It is beyond dispute that a defendant's right to exclude any prospective juror by means of a peremptory challenge is "one of the most important of the rights secured to the accused.... Any system for the empanelling of a jury that pre[v]ents or embarrasses the full, unrestricted exercise by the accused of that right, must be condemned." *Pointer v. United States,* 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894) (citations omitted). "Hence, where the trial judge frustrates the defendant's 'effective use' of peremptory challenges, the defendant need not demonstrate prejudice to obtain reversal of a conviction." *Wells v. United States,* 515 A.2d 1108, 1111 (D.C.1986) (citations omitted). In my view, the trial court's refusal in this case to allow defense counsel to ask further questions of two prospective jurors requires reversal under *Wells* and *Swain v.*

---

**2.** The only question that the trial court in *Musgrove* asked about the jurors' attitudes toward police brutality was: "Have any of you and[/]or any immediate member of your family or close friends ever filed a complaint against the police for either false arrest or for a police brutality charge?" *Id.* at 983 n. 3. The court also asked two general questions concerning whether each venire member felt that he or she could be fair and impartial in the case. *Id.*

**3.** Murray notes that the limitation upon her *voir dire* questioning also affected her ability to make challenges for cause, but devotes her entire argument to peremptory challenges. Our conclusion that the *voir dire* was adequate disposes of any argument that the trial judge infringed appellant's right to make challenges for cause.

*Alabama,* 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965) ("The denial or impairment of the right is reversible error without a showing of prejudice"), *overruled in part on other grounds, Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

There is simply no justification for the trial court's saying to defense counsel, "All right, pick your best two." The court's comments that further questioning of the venire was "time-consuming" and that "time [was] at a premium" cannot excuse the infringement of appellant's fundamental right to the effective exercise of her peremptory challenges. "The *voir dire* in American trials tends to be extensive and probing, operating as a predicate for the exercise of peremptories, and the process of selecting a jury protracted." *Swain v. Alabama, supra,* 380 U.S. at 218–219, 85 S.Ct. at 835. Although the court has considerable discretion in conducting the *voir dire* in any trial, it may not curtail the *voir dire* simply to save five or ten minutes, as it did here. I would hold that the court's action was arbitrary and capricious, and beyond the permissible limits of its discretion, because it impaired appellant's right to the effective use of her peremptory challenges. That is enough, under *Wells* and *Swain,* to compel a reversal of her conviction.

Accordingly, I dissent.