Herbert GIBSON, Appellant,

v.

UNITED STATES, Appellee.

Russell H. SYKES, Appellant,

v.

UNITED STATES, Appellee.

Nos. 93–CO–609, 90–CF–319.

District of Columbia Court of Appeals.

Argued March 15, 1994.
Decided Nov. 10, 1994.

Peter Meyers, with whom Lawrence M. Baskir, was on the brief, for appellant Gibson.

John C. Krollman, for appellant Sykes.

Laura A. Cordero, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., and John R. Fisher and Gregory E. Jackson, Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN, STEADMAN and SULLIVAN, Associate Judges.

SULLIVAN, Associate Judge:

■ After a joint jury trial with Russell H. Sykes and other defendants, Herbert Gibson was convicted of conspiracy to distribute cocaine, distribution of cocaine, and possession with intent to distribute marijuana, in viola-

tion of D.C.Code § 33–541(a)(1) (1993); Sykes was convicted of conspiracy to distribute cocaine.[1] Gibson and Sykes contend on appeal: (1) that the trial court improperly refused to permit adequate *voir dire* questioning into the relationships between prospective jurors and law enforcement personnel; (2) that the trial court erred in limiting the scope of a Jencks[2] inquiry and in failing to compel the production of all relevant Jencks material to trial counsel; and (3) that the evidence was insufficient to support their conspiracy convictions. Gibson also maintains that the marriage of his trial counsel to a police officer—which was not disclosed to Gibson until after the trial was underway and only after Gibson had observed his trial counsel's husband fraternizing with other police officer witnesses in the case—presented a conflict of interest which abridged his Sixth Amendment right to effective assistance of counsel. We find persuasive the *voir dire* argument made by appellants. Accordingly, we reverse their convictions and remand their cases for new trials.[3] In view of our disposition, it is not necessary for us to reach the remaining issue raised on appeal.

## I.

During the *voir dire* phase of jury selection, the government's attorney introduced to the panel of prospective jurors eight witnesses the government intended to call to testify in its case-in-chief. Seven of the eight witnesses were police officers and one was a civilian. Thereafter, thirteen prospective jurors stated that they or a close relative had been directly involved in law enforcement.[4] The trial court asked the prospective jurors with connections to law enforcement whether any member would be inclined to give either greater or lesser weight to the testimony of a police officer merely because the person testifying was a police officer; no one responded affirmatively. When counsel for codefendant Harris requested the trial court to ask follow-up questions to those prospective jurors *and* to grant permission for him to inquire further about a prospective juror's daughter, who was employed as a metropolitan police officer, the court denied the requests. In denying the requests, the trial court noted the negative response by the panel to the court's follow-up question. The dialogue between the trial court and defense counsel, who was interrupted by the trial court as he attempted to explain his point, was as follows:

MR. MCMILLEN: My point is, Your Honor—

---

1. This consolidated appeal comes before the court from convictions reached after a retrial. The first trial of appellants and their cohorts concluded with the jury acquitting Arnetta Allen of all charges, acquitting John C. Harris of the conspiracy charge, and unable to reach a unanimous verdict as to any charges against appellants and Hattie J. Ross. After her retrial and subsequent conviction, Ross' conviction was affirmed on appeal in an unpublished memorandum opinion and judgment, No. 90–377. The sole issue raised on appeal by Ross was her contention that the evidence was insufficient to support her conviction. It does not appear that Harris ever appealed his convictions.

2. 18 U.S.C. § 3500(c) (1988).

3. Although we reverse the convictions, viewing the evidence "in the light most favorable to the government, recognizing the [jury's] role in weighing the evidence, determining the credibility of witnesses, and drawing justifiable inferences from the evidence," as we must, *see Jones v. United States*, 625 A.2d 281, 288 (D.C.1993) (quoting *Ford v. United States*, 498 A.2d 1135, 1137 (D.C.1985)), the evidence was sufficient to sustain the convictions. The evidence at trial included testimony regarding a narcotics transaction between appellant Gibson and John Harris monitored by police surveillance units; Harris' sale of cocaine to an undercover police officer on two occasions; the recovery of pre-recorded police department funds from both Harris and Gibson following the monitored narcotics transaction; the discovery of $14,600 worth of rock cocaine at appellant Gibson's residence; the seizure of shopping bags, from a car in which Hattie Ross and appellant Sykes were riding, containing several bags of marijuana, packets of cocaine, a scale, cut or folded playing cards, and aluminum foil. Thus, as to this point, there is no bar to new trials for appellants. *See Burks v. United States*, 437 U.S. 1, 16, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978).

4. The potential jurors were identified as a former assistant U.S. attorney who had also served as an assistant corporation counsel for twelve years; a special police officer; two security guards; and a legal secretary. A number of other potential jurors were closely related to D.C. police officers, lawyers, and officers of the Montgomery County, Maryland, police force.

THE COURT: I know what your point is. It doesn't impress me.

\*    \*    \*    \*    \*    \*

THE COURT: You have your thoughts on the record. I want to seat the jury now.

MR. MCMILLEN: Very well, your honor.

THE COURT: This isn't Maryland.

## II.

█ Gibson contends that the trial court erred in not permitting any follow-up questioning of the thirteen prospective jurors who stated that either they or a close relative had been directly involved in law enforcement. The government contends that this court must apply the "plain error" standard since no objection was made at trial. While counsel for neither Gibson nor Sykes objected to the adequacy of *voir dire* at trial, and plain error is ordinarily applied in such circumstances, *Harris v. United States*, 602 A.2d 154, 159 (1992) (en banc); *see also Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc) (to justify reversal under this standard, "the error[s] complained of must be so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial"), we reject the plain error standard in the present case.

This court has held that an objection is preserved when made by a codefendant. *(Kirk) Williams v. United States*, 382 A.2d 1, 7 n. 12 (D.C.1978) (if a codefendant has raised an objection, the purposes of the plain error rule—presentation of the issues by the prosecution and review by the trial court— may be satisfied and the defendant's failure to object overlooked); *Perkins v. United States*, 446 A.2d 19, 25 n. 4 (D.C.1982) (same).[5] Moreover, when "counsel has attempted to proffer a particular type of evidence [or objection] and the trial court has made its unwillingness to entertain a proffer

absolutely clear, [co-] counsel should not be expected to risk contempt by pressing further to make an offer of proof [or to preserve that objection]." *See McBride v. United States*, 441 A.2d 644, 657 (D.C.1982). Since the trial court record reveals clearly that appellants' codefendant, Harris, made the objection, thereby preserving that objection for appellate court review, we measure this case against the "harmless error standard" as set forth in *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). *Williams, supra*, 382 A.2d at 7 n. 12. Applying this standard, we hold that the error complained of did contribute to the verdict obtained. *Chapman, supra*, 386 U.S. at 24, 87 S.Ct. at 828.

## III.

█ We recognize that the trial court has broad discretion in conducting *voir dire* examination. *Jenkins v. United States*, 541 A.2d 1269, 1272 (D.C.1988). *See also Khaalis v. United States*, 408 A.2d 313, 335 (D.C. 1979), *cert. denied*, 444 U.S. 1092, 100 S.Ct. 1059, 62 L.Ed.2d 781 (1980). However, the right to an appropriate *voir dire* is rooted in the Sixth Amendment guarantee of an impartial jury. *Jenkins, supra*, 541 A.2d at 1273 (citing *Rosales–Lopez v. United States*, 451 U.S. 182, 188, 101 S.Ct. 1629, 1634, 68 L.Ed.2d 22 (1981) (plurality opinion)). *See also Dennis v. United States*, 339 U.S. 162, 168, 70 S.Ct. 519, 521, 94 L.Ed. 734 (1950) ("the trial court has a serious duty to determine the question of actual bias"); *Cordero v. United States*, 456 A.2d 837, 847 (D.C.1983) (quoting *United States v. Dellinger*, 472 F.2d 340, 367 (7th Cir.1972), *cert. denied*, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973)) (adequate *voir dire* affords "a reasonable assurance that [juror] prejudice would be discovered if present"). Where, as here, dur-

---

5. Although Sykes did not expressly brief the *voir dire* issue on appeal, his appellate counsel joined with Gibson's counsel to argue this issue during oral argument before this court. Thus, the issue was not "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.), *cert. denied*, 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990); *Brown v. Trustees of Boston Univ.*, 891 F.2d 337, 352 (1st Cir.1989), *cert. denied*, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990); *cf. Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir.1988). Moreover, assuming that Sykes had neither raised nor argued this issue on appeal, "an appellate court may, in its discretion, take note of a material trial error that has not been pressed on appeal." *Wells v. United States*, 515 A.2d 1108, 1110 n. 1 (D.C.1986).

ing *voir dire*, the government announces its intent to rely almost exclusively on police officer witnesses to attempt to prove its case and several prospective jurors respond that either they or their family members are connected with law enforcement, the trial court, upon request by a defendant, must permit at least some minimal further inquiry which could elicit bias in favor of police testimony. *Accord, Jenkins, supra,* 541 A.2d at 1273 n. 1, 1275; *Murray v. United States,* 532 A.2d 120, 123–24 (D.C.1987); *Harvin v. United States,* 297 A.2d 774, 777–78 (D.C.1972).

In the present case, the trial court initially, and quite appropriately, inquired of the venire members whether they were predisposed to lend more or less credence to police officer testimony. *Harvin, supra,* 297 A.2d at 777–78. *Accord, Jenkins, supra,* 541 A.2d at 1274–76; *Brown v. United States,* 119 U.S.App.D.C. 203, 204, 338 F.2d 543, 544 (1964); *Sellers v. United States,* 106 U.S.App.D.C. 209, 210, 271 F.2d 475, 476 (1959) (per curiam). Nevertheless, it is well settled that under circumstances similar to those in the present case, the trial court should not rely upon a single general question to prospective jurors to inquire about their potential bias. *See Murray, supra,* 532 A.2d at 123; *Harvin, supra,* 297 A.2d at 777–78; *Dellinger, supra,* 472 F.2d at 367. Further questioning is needed to permit parties "to explore the backgrounds and attitudes of the jurors to some extent in order to discover actual bias or cause." *Dellinger, supra,* 472 F.2d at 367. *See also Jenkins, supra,* 541 A.2d at 1272 (quoting *Glymph v. United*

*States,* 490 A.2d 1157, 1162 (D.C.1985)). Here, the trial court's failure to allow counsel to conduct any further *voir dire* whatever infringed upon the appellants' right to exercise either challenges for cause or peremptory challenges.

The right of peremptory challenge is protected in the District of Columbia by statute, and, although this right is not specifically guaranteed by the Constitution, "[o]ne of the primary goals of peremptory challenges is to assure the trial's impartiality." *Cash v. United States,* 553 A.2d 215, 217 (D.C.1989). *See also Ross v. Oklahoma,* 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80 (1988). "A defendant's right to exclude any prospective juror by means of a peremptory challenge is 'one of the most important of the rights secured to the accused. . . . Any system for the empanelling of a jury that pre[v]ents or embarrasses the full, unrestricted exercise by the accused of that right, must be condemned.'" *Murray, supra,* 532 A.2d at 125 (quoting *Pointer v. United States,* 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894)). "Hence, where the trial judge frustrates the defendant's 'effective use' of peremptory challenges, the defendant need not demonstrate prejudice to obtain reversal of a conviction." *Wells v. United States, supra* note 5, 515 A.2d at 1111.[6] *See also Wilson v. United States,* 606 A.2d 1017, 1025 (D.C.1992); *(Lawrence) Williams v. United States,* 552 A.2d 510, 512 (D.C. 1988). Although we can appreciate the trial court's desire to proceed expeditiously, expe-

**6.** Our dissenting colleague's view that certain juror responses did not appear to mandate further inquiry runs somewhat counter to the purpose of peremptory challenges and challenges for cause. In further response to our colleague, we note that the record does not clearly indicate that the juror whose daughter was employed by the local police was excused prior to deliberations. Even assuming that the juror was eventually excused, however, the trial court nevertheless improperly frustrated appellants' right to exercise their peremptory challenges and challenges for cause. Furthermore, not knowing what biases may have been revealed by further questioning, we should be loath to speculate that additional inquiry would have been futile, especially since the government's case relied almost entirely upon police testimony. More specifically, even if, as our dissenting colleague says, "[t]he

other ten [potential jurors] who responded were striken for cause or through peremptories or were not reached," *post* at n. 3, this does not demonstrate the absence of prejudice. Had the required follow-up questions been allowed, there may have been, through *voir dire,* additional strikes for cause, resulting in the availability of peremptory strikes to disqualify jurors who had been seated in favor of others remaining in the jury panel. The errors at issue here constitute structural errors and involve "defects in the constitution of the trial mechanism" which affect the entire conduct of the trial from beginning to end and thus can never be harmless. *Arizona v. Fulminante,* 499 U.S. 279, 309–310, 111 S.Ct. 1246, 1264–1265, 113 L.Ed.2d 302 (1991). Appellants, therefore, need not demonstrate actual prejudice here in seeking reversal of their convictions. *Wells, supra* note 5, 515 A.2d at 1111.

diency must always yield to a fair jury selection process.[7]

Accordingly, we hold that under the unique circumstances of *this* particular case, the trial court, upon request, should have allowed, or conducted, a *voir dire* examination which was "minimally sufficient" under the standard set forth in *Murray v. United States, supra,* 532 A.2d at 123, in which this court condemned the practice of asking "a single conclusory question regarding juror prejudice." *Id.* (citing *Dellinger, supra,* 472 F.2d at 369). In *Murray,* the trial court asked whether any potential juror was closely associated with anyone having connections with law enforcement, and two prospective jurors responded affirmatively. After asking these particular panel members whether the affiliation would prejudice them in the case, the court asked follow-up questions. The trial court specifically asked one prospective juror, whose sister worked as a D.C. police officer, several detailed questions designed to elicit bias.

> COURT: Is there anything about her work, maybe some story that she has told you of one of her experiences? Maybe she's been injured or maybe she has shared a view with you that has made a strong impression upon you that causes you to believe that you might be biased or prejudice[d] against either side in this case?

*Id.* at 121. The trial court also directed detailed inquiry to a prospective juror whose cousin was a lawyer. *Id.* at 123 n. 1.

In the present case, the court erred by denying defense counsel's reasonable request for follow-up into one of the "common areas of inquiry in a jury *voir dire." Id.* at 123

(citing *Young v. United States,* 478 A.2d 287, 289 (D.C.1984)). Here, the trial court's *single* conclusory question as to the venire's ability to be impartial fell short of the minimal requirements set forth by this court in *Murray.* We conclude that the trial court did not meet the standards of minimal sufficiency in its questioning of the venire regarding potential bias. Accordingly, we reverse the convictions of Sykes and Gibson and remand their cases for new trials.[8]

*So ordered.*

STEADMAN, Associate Judge, dissenting:

We have often taken cognizance of the "broad discretion" of the trial judge in conducting *voir dire* to uncover possible juror biases, holding that reversal should occur only where "the record reveals an abuse of discretion coupled with substantial prejudice to the defendant." *Matthews v. United States,* 599 A.2d 1389 (D.C.1991) (quoting *Boertje v. United States,* 569 A.2d 586, 592 (D.C.1989)). Here, the trial court first asked whether any jurors had any affiliation with law enforcement, and, with respect to the thirteen jurors who responded, questioned them individually as to the general nature of that affiliation. He followed that immediately with the general questions about favoring or disfavoring testimony by police officers.

Given our highly-deferential standard of review, I cannot say that the trial court under these particular circumstances was absolutely required to allow further inquiry at pain of reversal.[1] Furthermore, appellants here made no showing whatever of any prej-

---

7. In the present case, the trial court did not issue special instructions regarding police testimony to bolster impartial decisionmaking by the jury. In any event, instructions may not be a substitute for adequate *voir dire. See Jenkins, supra,* 541 A.2d at 1275.

8. Although this court has granted a petition for rehearing en banc in an appeal raising the issue of whether a trial court's interference with the exercise of the right to peremptory challenges presents a case of "structural defect" mandating reversal without inquiry into harm or prejudice, the issues in that case appear to be distinguishable from those in the present case. *See Lyons v.*

*United States,* 645 A.2d 574, 580 (D.C.1994), petition for rehearing en banc granted and opinion and judgment vacated, October 31, 1994.

1. As we noted in *Murray v. United States,* 532 A.2d 120, 123 (D.C.1987), it may have been the "better practice" to delve further into a juror's relationship with law enforcement. However, I do not understand that case to have set an absolute minimum level of inquiry or to mandate that the questions as to partiality toward or against testimony by police officers be addressed individually to each responding juror.

udice in fact or any analysis of the actual outcome of the jury selection process.[2] I cannot agree that, in light of our repeated assertion of the need to show "substantial prejudice," any limitation on *voir dire* can be treated as the equivalent of a direct interference with the exercise of the right to per-

emptory challenges and analyzed as such for purposes of reversal.[3]

**2.** It appears to me from the record before us that only two of the jurors responding to the law enforcement questions eventually served. One had answered that she was a legal secretary and the other that his "father's second wife's brother-in-law" was a lawyer, neither of which response would seem to mandate further inquiry. The juror whose daughter was with the local police department served as an alternate and was apparently excused at the end of the trial prior to deliberations. The other ten who responded were stricken for cause or through peremptories or were not reached. So here, as in *Murray,* where a law enforcement-related juror was stricken, it would appear that the actual outcome "eliminat[ed] any chance that participation by [a law-enforcement-related] juror might have prejudiced appellant." 532 A.2d at 124.

**3.** Indeed, the issue of proper appellate analysis of reversibility in cases of asserted trial court interference with peremptory challenges has been

raised in an appeal now pending before the en banc court, as the majority points out in footnote 8.

Given the reversal on the ground of error in *voir dire,* I like the majority do not reach appellants' other arguments on this appeal. However, I might add that I harbor considerable doubt whether either appellant here may on appeal complain of the *voir dire* process. A trial judge's obligation to allow further questioning is dependent upon a request by a defendant and thus in declining such a request, the judge commits "error" only as to that defendant. Indeed, even where a trial court ruling is "error" in the generic sense, there would seem to be merit in a requirement that each defendant feeling prejudiced by the error should separately make that fact known. A claim of error asserted by all defendants may more tellingly suggest to the trial court the possible merit in the claim and the necessity for careful consideration.